Railroad *v.* Lawson.

RAILROAD   *v.*   LAWSON.

(*Knoxville.*    September   22,   1900.)

1. WITNESS.   *Corroboration of, by proof of consistent statements.*

Previous statements of a witness, consistent with his testimony, made immediately after the occurrence about which he testifies, and before the alleged inducement to speak falsely had intervened, are competent, in corroboration of his testimony, when the manifest purpose and tendency of the cross-examination are to impress the jury that he had been induced to give evidence favorable to the opposite party by the payment or promise of a bribe.   (*Post, pp. 640–642.*)

Cases cited: Dossett *v.* Miller, 3 Sneed, 76; Glass *v.* Bennett, 89 Tenn., 478; Hays *v.* Cheatham, 6 Lea, 10; Queener *v.* Morrow, 1 Cold., 134; Bank *v.* Hall, 1 Bax., 484; Graham *v.* McReynolds, 90 Tenn., 697; Bradshaw *v.* Jones, 103 Tenn., 338.

2. SUPREME COURT.   *Will not reverse on account of loose statements of trial Judge.*

It affords no ground for reversal of a judgment that the trial Judge, in refusing a new trial, indulged in a loose, rambling talk about the case, giving expression to some unfortunate remarks about the state of his mind, and about his personal knowledge of the character of one of the witnesses, where it appears that his action was based on legal grounds, and that he was satisfied with the verdict, upon a review of the whole case.   (*Post, pp. 642–645.*)

3. VERDICT.   *Of five hundred dollars, supported by the evidence.*

The Court finds the evidence, commented upon in the opinion sufficient to support a verdict for five hundred dollars for personal injuries.   (*Post, pp. 645–647.*)

---

FROM   HAMILTON.

---

Appeal in error from Circuit Court of Hamilton County.   FLOYD ESTILL, J.

BROWN & SPURLOCK for Railroad.

W. T. MURRAY for Lawson.

WILKES, J.   This is an action for damages for personal injuries.   There was a   trial before the Court and a jury, and a verdict and judgment for $500, and defendant railway company has appealed, and assigned errors.

The first error assigned is to the admission of the testimony of a witness, Kline, who purports to give previous statements of the witness, Louise Link, confirmatory of what she swore upon the trial.   The witness, Louise Link, testified to having seen the plaintiff struck by the defendant's engine. She was rigidly cross-examined by the defendant's counsel, and was asked if she had not come from Kentucky in order to testify in this case for plaintiff, and if she had not been paid to testify, and if she had not been promised a reward, and a part of the recovery for testifying as she did. The entire cross-examination was calculated and unquestionably intended to impeach her character for credibility, and discredit her testimony.   It is insisted that previous confirmatory statements are allowable in cases where the witness has made other statements inconsistent with those made in Court, in which case it is permitted to introduce evidence that on previous occasions the witness had made statements consistent with his testimony given in Court.   This is the rule as laid down in *Dossett* v. *Miller*, 3 Sneed,

76, but it has not been confined alone to this class of cases, but it is extended to instances where a design to misrepresent is charged upon the witness in consequence of his relation to the party or cause or because of a newly acquired interest in the matter in controversy. See, also, *Glass* v. *Bennett,* 89 Tenn., 478; *Hays* v. *Cheatham,* 6 Lea, 10; *Queener* v. *Morrow,* 1 Cold., 134; *Bank* v. *Hall,* 1 Bax., 484; *Graham* v. *McReynolds,* 6 Pickle, 697.

It has likewise been held that when the credibility of a witness is attacked by a contradition of his testimony, it may be sustained by previous confirmatory statements made by him. *Green* v. *The State,* 13 Pickle, 69. And such confirmatory statements are competent when the credibility of the witness or his statements on trial are assailed by cross-examination tending to show the statement to be incorrect or the witness unreliable because of a subsequently acquired interest. *Bradshaw* v. *Jones,* 19 Pick., 338; 1 Greenleaf on Evidence (16 Ed.), sec. 469, pp. 605-607.

In this case the evident intention was to show that the witness was swearing under a hope of reward held out to her, and it was entirely competent in such case to show that, immediately after the event, and when it was not charged that she had been offered any inducement, she had made statements consistent with those made on the trial.

21 p—41

This assignment is not well made.

It is said that the trial Judge erred in his action in overruling the motion for a new trial. The specific grounds of exception to his action are that from his statement made in disposing of the motion, it appeared that he had not made up his mind as to what he should do, and was not satisfied with the verdict; that he discredited the only evidence on which he could sustain the verdict; that he was influenced in part by the evidence of the witness, Kline, which should have been excluded; that he discredited one of the witnesses from his own personal knowledge of how he had sworn in a different case on a previous occasion; that he stated that, in order to set aside the verdict, he would be compelled to find that the lady witnesses of the plaintiff had willfully sworn falsely, which he could not do.

What the Judge did say in overruling the motion was: "In this Lawson case I have been sort of a hung jury about it; I have not really had the time to make up my mind as I would like, but this is the last day of the term, and the time has come to decide it. These women that testified about this engine running over this man are thoroughly respectable-looking women, both of them. That girl was an intelligent girl, too, but they are evidently mistaken about two very material things that they have stated. In the first place, they are evidently mistaken about having

Railroad v. Lawson.

followed that man out there. I have got to disbelieve the testimony of all the other witnesses in the case to believe that they followed him .from Ninth Street on Market on down there to where this man was hurt. And they are mistaken about the way the train was going, and about the train having two cars attached to it. That is a thing they could be mistaken about. But about seeing the man struck—that is a thing that they could not be mistaken about, if they were telling the truth. I cannot believe that these two women have perjured themselves, and there is nothing here to show that they have. This preacher says that the girl came right on out there and told him about seeing a man hurt. She is a bright-faced, sweet-looking girl, and it is contrary to all my observation in human nature to believe that a child like that—and she is nothing but a child—could be corrupted in the manner insinuated by a promise of reward for her swearing. She is positive that the man was right there at the track and she saw him get struck, and she states that her mother came very near getting struck, so much so that she had to grab her and pull her back. And to say that this verdict is not supported by the evidence I would have to say that these two women have willfully, deliberately, and corruptly sworn a lie about this transaction. This man was an entire stranger to them. They had never seen him before, and unless they had been

hired to swear, there is no possible motive that I can see to induce them to swear to this state of facts;. there is no evidence to show that they have been corrupted, and while there is a great deal of reliable testimony that is in conflict with their statement about it, still I will have to over-rule the motion. I cannot believe that these two women have deliberately sworn a lie about this matter. Nobody else saw it except the flagman, and he, of course, is interested. They do not appear to be. interested, while the flagman is in-terested in showing that he did his duty—he has that much interest in it, at least. This engineer, of course, is interested, and I know that he is an unreliable quantity. I have seen him perform before. He testified to a state of facts up here on one occasion that I knew were untrue. He is not worthy of belief at all. I will overrule the motion."

While the language of the trial Judge is some-what unfortunate, we think that, properly under-stood, it means that he would have been glad to have had more time to consider the application. But still his mind was made up that in view of evidence which he could not discredit he would be compelled to refuse the motion. That he based. his action largely upon the testimony of the two ladies is apparent, and also that while he found evidence in conflict with theirs he could not ques-tion them on the main important features of the

case.  His  statement, of  his  opinion  of  the  engi-
neer  as  a  witness  was  also  unfortunate,  but  it
was  nothing  more  than  an  expression  of  his  opin-
ion  of  his  credibility.  This  opinion  he  no  doubt,
entertained,  whether  he  expressed  it  or  not.  The
fact  that  it  was  based  in  part  upon  his  appear-
ance  and  testimony  in  a  former  trial  to  some
extent  was  a  matter  which  he  should  have  ex-
cluded  from  consideration,  but  we  are  not  to  in-
fer  from  this  expression  that  he  would  have  dis-
regarded  the  statement  of  the  witness  because  of
this  preconceived  opinion  if  he  had  been  satisfied
he  was  telling  the  truth  upon  this  occasion.  The
error  of  the  learned  trial  Judge  was  perhaps  in
expressing  the  thoughts  and  processes  of  his  own
mind  too  freely,  but  we  can  see  no  reversible
error  in  his  conclusions  and  action  in  the  matter.
The  evidence  of  the  engineer  bears  upon  its  face
evidences  of  contradiction  and  unreliability.

It  is  said  that  there  is  no  evidence  to  sup-
port  the  verdict.  In  this  connection  it  is ' vir-
tually  admitted  that  if  the  testimony  of  the  la-
dies  is  to  be  considered  as  reliable,  it  would  be
sufficient,  but  it  is  insisted  that  it  was  discred-
ited  by  the  trial  Judge,  or  at  least  so  much
doubt  thrown  upon  it  that  it  should  have  been
disregarded  by  him  and  also  by  this  Court.  The
trial  Judge  was  of  opinion  they  were  mistaken
about  following  the  plaintiff  down  the  track,  as
they  testified,  and  also  about  the  direction  in

which the engine was going, but he was satisfied they saw the plaintiff struck by the engine.

We think there is perhaps more of confusion than of contradition in the record. It is apparent that there were a number of engines and cars passing over the tracks in the locality where the injury occurred, that there were a number of tracks and a crossing, and witnesses evidently confused one with another, and testified as to different trains. The testimony of the plaintiff is almost valueless, as he was too drunk to know what he was doing, according to his own statement.

The ladies testify that they saw plaintiff struck by the engine at the crossing; that there was no flagman at the crossing or in front of the train; that no bell was sounded, no alarm was given; that the train was moving rapidly, and coming from the direction of Atlanta; and the flagman came out of his house after the accident.

The testimony of the engineer is contradictory in itself. According to his version, the plaintiff ran or staggered against the tender as it was running, and was knocked straight out from it. He admits that upon his theory he cannot account for the fact that the plaintiff's feet were crushed or hurt. The fireman gives still another version, to-wit: that the plaintiff, with the watchman, passed over the track, and the fireman says that when he last saw him he was thirty or forty feet

Railroad *v.* Lawson.

in the rear of the engine after it had passed. He cannot account for the hurt. As before stated, there is much confusion in the testimony, but there is sufficient evidence to sustain the verdict.

The judgment is affirmed with costs.