## MESSENGER vs. MILLER and others.

1. SALE OF SQUATTER'S CLAIM — CONSIDERATION. Where a note and a mortgage securing the same, on certain lands to which the mortgagor afterward acquired title, were given for a mere squatter's claim on the public lands, upon which the improvements were trifling, and were not, in fact, made by the payee of the note, and to induce him not to bid on the land at the sale, and which claim was likely to be defeated by a sale of the land by the United States, *Held*, that the note and mortgage were void for want of consideration, and there being no covenant of warranty in the mortgage, even if there were a valid consideration for the note, the land in question would not be bound for its payment.

2. CONTRACT — CONSIDERATION. A moral or equitable obligation is a sufficient consideration for a promise, but there must be some benefit arising to the promisor, or loss or detriment to the promisee, in order to constitute a valid consideration.

3. ESTOPPEL. If the complainant had taken an assignment of the note and mortgage on the faith of representations on the part of the mortgagor that the note and mortgage were valid obligations, he would be bound thereby; but having taken the assignment in question after the maturity of the note, he is affected with full knowledge of the facts; and in the absence of any such assurance or representations, the mortgagor and those claiming under him are not estopped from insisting that the note and mortgage were void for want of consideration.

APPEAL from the District Court for *Walworth* County.

The case is fully stated in the opinion of the court.

*Levi Hubbell*, for appellant.

*C. M. Baker* and *H. N. Wells*, for appellees.

MILLER, J.    The bill in this suit is for the foreclosure of a mortgage given to secure the payment of a promissory note, bearing date February 23, 1839, and payable to one Milton Charles.  Said mortgage is in the usual form, upon a quarter section of land, describing it, with a covenant to pay the amount to said Charles, his executors, administrators or assigns.   The bill sets forth that the complainant is not certain that the defendant *Miller* was the owner in fee of the land at the date of the mortgage, but believes he was, and charges that, if he was not the owner thereof, he did subsequently acquire a good title, which complainant claims, should in equity operate as a confirmation of said mortgage, inure to his benefit, and be vested in him.   Said mortgage was assigned, first to Merrill, then by him to Lane, and by him to the complainant.   It is stated also in the bill that *Miller* afterward sold or mortgaged said mortgaged premises to *Loomis*, one of the defendants, and that *Loomis* mortgaged or sold the same premises to *William Rowen*, another of the defendants, and that said *Rowen* sold or assigned his interest to *William S. Elliott*, the remaining defendant.   The said defendants *Miller* and *Loomis* filed their answer to said bill.   In their answer the mortgage is confessed, and it is alleged that, in the year 1837, said *Miller* purchased of said Charles a claim to tracts or pieces of land, including the land mortgaged, for the consideration of $400 ; that at that time said Milton Charles did not own the land, but that it belonged to the United States, and that this claim belonged to the brother of said Charles, who had abandoned it and left the country.   There was no house or improvement of any kind on the land, except a small patch which had been broken, not fenced nor cultivated ; that said Charles had agreed to get out about two thousand rails for said *Miller*, which agreement had not been performed. Defendants further state that they did at various times make payments to said Charles on account of said purchase, until the said sum agreed to be paid was

reduced to $150, the amount of the note and mortgage; that at the date of the mortgage the land had not been sold by the government, and that all the interest they then had was a bare possession, which was liable to be defeated by a government sale; that there was no covenant of warranty in said mortgage of the title which they might acquire. After the execution of said note and mortgage, the said premises were sold by the government to said *Miller*, when said *Miller*, for the sum of $1,000, mortgaged the said premises to *Loomis*, and afterward, for a valuable consideration, conveyed the premises to him in fee. The other two defendants did not answer.

The suit was tried upon bill, answer, replication, exhibits and proofs. It appeared in evidence, that the land was sold by the government to *Miller*, on the 26th February, 1839, three days after the date of the mortgage; also, that the note and mortgage were given upon a settlement of the difficulties then existing between the parties, respecting their respective rights to bid for the land; and that *Loomis*, *Miller* and Merrill were present at, and assisted in the transaction. Merrill paid the note to Charles after it became due, with the approbation and at the request of *Miller* and *Loomis;* and in pursuance of a previous agreement, on his part, to pay the money if they did not. He took an assignment from Charles of the mortgage. When the note and mortgage were given no objection was made on account of the rails; nor no new engagement to get them out was required. It was also proven that all the breaking done was about two acres and worth $50; that all that was done on this land, previous to the original contract between Charles and *Miller* in 1837, was done by Luther Charles, the brother of Milton, in the year 1836. The man who did the breaking, proved that Luther Charles employed him to break; that he broke about half an acre on this quarter section, for which he was paid by Luther the sum of $10; that there was no fence nor house on the land; that

Milton Charles made no claim to the land until the year 1837, and not until after his brother Luther had left the country. It appeared, also, that *Miller* conveyed the premises to *Loomis* in the month of October, 1839. The first point presented is want of consideration. It appears that the sum of $400 was, in the year 1837, agreed to be paid by *Miller* to Charles for his claims; and that in the year 1839, when the land described in this mortgage was about being sold by the government, *Miller* and *Loomis* gave Charles this note and mortgage for the residue of the purchase money aforesaid, upon settlement of their difficulties, which induced him not to trouble *Miller* at the sale by bidding, in competition, for the land; and that Merrill then, also, came under a verbal engagement or promise to pay the amount if they should fail to do so. It is not pretended that the parties contracted to sell and convey, on the one side, and to purchase, on the other, the fee of the land. It was merely a purchase of a naked *claim* to or upon public land, or rather a pretense of *claim*. A moral or equitable obligation is a sufficient consideration for an assumption. *Clark v. Herring*, 5 Binn. 33. But there must be some benefit arising to the defendant or some injury or loss to the plaintiff. *Austin v. McLure*, 4 Dall. 226; *Waters v. Miller*, 1 id. 369; *Hemabee v. Eberley*, 2 Binn. 509; *Doty v. Wilson*, 14 Johns. 378; *Smith v. Ware*, 13 id. 257. Milton Charles, the payee of this note, did not make the improvement or do the work, but his brother, Luther Charles did. The ploughing was done by Luther in 1836, who disappeared, and the year after, Milton sold to *Miller*. Milton neither worked nor expended money, nor had the actual possession. There was no house or fencing on the land. He had no authority to put *Miller* into possession or give him seizin; nor could he legally transfer to *Miller* any authority, or right to purchase the land at the sale in preference to himself or any other person. There was neither in law or fact the least loss or injury to the plaintiff, nor accommodation to the

defendant. Half an acre of broken land in a prairie, uncultivated, without fence or house, cannot be an accommodation or benefit to a purchaser of a half section of land, for farming purposes, worthy his consideration. The land being vacant, *Miller* has as good a right to enter upon it as Charles. Neither had any legal right.

The note and mortgage being given two years after the alleged agreement of sale, are not thereby any more obligatory than if given at the time. No additional consideration passed, no additional reason is given, except that Charles was thereby satisfied, and did not bid at the sale in opposition to *Miller.* This, in law, is no consideration for an assumpsit or undertaking. *Miller* had the same right to bid at the sale that he had, and if he chose to withdraw all competition as a bidder in opposition to *Miller* in consideration of this note, he certainly did not thereby add to *Miller's* obligations, or strengthen the consideration. It is contended that the defendants are concluded or estopped from setting up this defense, on the ground of the payment of the money by Merrill to Charles at their request, their promise to pay him the amount, and the subsequent assignments of the note and mortgage by Charles to him, and from him through Lane to the complainant. It appears that Merrill came under some verbal promise to pay this debt to Charles, if *Miller* and *Loomis* should fail to do so. At their request he paid it. He knew of the transaction, and the reason why the note was given. He was aware of all the circumstances attending it when he paid the money, and was not deceived nor defrauded by *Miller* or *Loomis*, or induced to pay the money through any concealment of facts or misrepresentation on their part. He paid the money as a surety or a friend, with full knowledge of the facts. The law is so well settled as not to require citation of authority, that if he had paid the money and taken an assignment of the note and mortgage innocently, at the request of the makers, that they would be bound thereby,

and could not set up any defense as against him, either in law or equity, connected with the original consideration. If he paid the money as surety, he had a good cause of action against them, even without their promise to pay. But these defendants are not estopped or concluded in this suit. The complainant took an assignment of this note after it became due and dishonored. This was sufficient to put him upon inquiry. There is no direct privity of contract between this complainant and the defendants, nor does the transaction with Merrill create such a contract or obligation as runs with the note and mortgage. The complainant was not induced to take the assignment, and become the purchaser by the defendants. This disability prevails only in favor of the person who has acted upon or been drawn in by the acts, misrepresentations or conduct of the defendants. *Jennings v. Whitaker*, 4 Monroe, 31 ; *Tefts v. Hayes*, 5 N. H. 452 ; *Welland Canal Company v. Hathaway*, 8 Wend. 480. The note and mortgage having come to the hands of the complainant after due, are subject to all the equitable defenses that they would have been in the hands of the original party, and it is competent for the defendants to make this defense. It is entirely unnecessary to decide whether or not the defendants, as mortgagors, can dispute the title, or set up an outstanding title, or whether or not the subsequently acquired title of defendants inured to the benefit of the mortgagee and his assignees, or whether or not the purchase money unpaid is a lien upon the land. The defense of want of consideration prevailing, these points do not necessarily arise.

The decree of the district court dismissing the bill must be affirmed.