Pelitier vs. Chicago, St. Paul, Minneapolis & Omaha R. Co. and another.

PELITIER, by guardian *ad litem*, Appellant,' vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY and another, Respondents.

*September 6 — November 13, 1894.*

*Railroads: Injury to child on track: Instructions to jury: Preponderance of evidence: Proximate cause.*

1. A charge that the jury must be satisfied by the preponderance of the evidence, to a reasonable certainty, that a fact existed, before they could find such fact, was not erroneous. *Telford v. Frost,* 76 Wis. 172, distinguished.

2. In an action for personal injuries it was not error to charge that if the negligence of defendant's servants was not the proximate cause of the injury it would be robbery, under the forms of law, to compel it to respond in damages.

3. In an action for personal injuries to a child who was run over by cars which were being backed, without warning, at a place where people were accustomed to cross defendant's railroad track, after the jury had been fully instructed as to the duty of defendant to keep a lookout in such places, the omission of any reference to the want of a lookout, in giving an illustration of the meaning of the term " proximate cause," was not error, where the jury were afterwards told that it was for them to consider whether, by the exercise of ordinary care, the trainmen might have known that the child was on or near the track,— it being thus plainly left to the jury to determine whether a proper lookout would have avoided the accident.

APPEAL from the Circuit Court for *Douglas* County.

This is an action to recover for personal injuries. The defendant operates a railroad track on what is known as Connor's Point, near the city of Superior. This track runs northwest and southeast, parallel with the southwest shore of Superior bay. The right of way on which defendant's track runs is twenty-five feet wide, and the northeast line thereof is about fifty feet from the shore line of the bay. Immediately joining and on the southwest of the defendant's right of way is the right of way of the Northern

Pacific railway, which is forty feet wide, and also has a railroad track upon it. Both of these tracks are transfer tracks, not used for train service, but for switching, storing, and transferring cars from one road to the other. The defendant's right of way is not fenced. Several small houses stand upon the strip of shore between the defendant's right of way and Superior bay, which have been built and are occupied by squatters. The occupants of these houses have no outlet to stores or schools save across defendant's railway tracks, and the tracks were continually used by numbers of people for that purpose. In one of these houses, in December, 1890, lived Francis Pelitier, Sr., with his wife and two children, one of them being the plaintiff, who was at that time two years and nine months old. One St. Peter lived in another of these houses on the strip of beach, at a distance of 100 feet or so from Pelitier's house. Both houses were built on posts, and stood fronting the railway track of the defendant, the front being about one foot outside of the right of way. Over the front door of St. Peter's house was a stormhouse, four feet wide, most of which stood within defendant's right of way. Defendant's track stands nearly nine feet above the water of the bay, and about two feet above the floors of the houses, the track being upon an embankment made of old ties and dirt.

On the afternoon of December 16, 1890, the plaintiff's mother made a visit at Mrs. St. Peter's house, taking with her the plaintiff and an infant eighteen months of age. At the time she went to Mrs. St. Peter's house, there were fifteen to twenty freight cars standing on defendant's track, apparently coupled together, the north end of the train being in front of the St. Peter house. One or two other freight cars stood further to the north, separated a few feet from the first-mentioned train of cars. All of the cars had been standing there for some hours. Mrs. Pelitier stayed at Mrs. St. Peter's house perhaps two hours, and

some time between 3 and 4 P. M. went home to unlock the door and build the fire, and left her children at Mrs. St. Peter's house. In a few minutes she came back to get the children. When she came out of the St. Peter house the second time, she was carrying the baby, and plaintiff walked behind her, and Mrs. St. Peter also went out on a platform in front of the house. The edge of this platform was about four feet from the railroad track, and two feet below it. While the women were standing on the platform, Mrs. Pelitier missed the plaintiff, and asked Mrs. St. Peter where he was. Mrs. St. Peter looked, and saw him under a coal car right in front of her house, being one of the fifteen or twenty cars first mentioned. The cars were not then moving, but they saw that the engine was attached to the southeast end of the train. According to Mrs. St. Peter's evidence, the boy got across the track, went a few steps towards the Northern Pacific track, and then returned, and, while trying to recross the defendant's track, was run over by the train, which was just then backing a few feet in order to couple on the detached cars. The boy lost one foot and one hand. No whistle or bell was sounded. The evidence of Mrs. St. Peter was apparently that the plaintiff was trying to cross the track at the opening between the train and the detached cars when he was run over; but the evidence of the trainmen was to the effect that he was run over three or four car lengths from the end of the train; hence that he must necessarily have been crawling under or between cars in the train.

A special verdict was returned by the jury, in which they found, in answer to appropriate questions, (1) that the defendant, before the accident, sanctioned the practice of persons living near its track using such track to travel on at the place where the accident happened; (2) that the trainmen, in the exercise of ordinary care, ought to have anticipated that a child might probably be upon the track in the immediate vicinity of the cars where the accident occurred,

when they caused the cars to be moved back; (3) that the trainmen failed to exercise ordinary care when they moved the cars back at the time of the accident; (4) that such failure to exercise ordinary care was not the proximate cause of the injury; (5) that the railroad track, where the boy entered thereon, was sufficiently protected without a fence to prevent cattle and other domestic animals from straying upon such tracks; (6) that there was want of ordinary care on the part of the boy's mother that contributed to produce the injury complained of. On this special verdict, judgment was entered for the defendants, and from such judgment the plaintiff appeals.

For the appellant there was a brief by *John Brennan* and *B. F. Hutchins*, and oral argument by *Mr. Brennan* and *R. M. Bashford*. They contended, *inter alia*, that the instruction that the jury must be satisfied to a reasonable certainty that a fact existed before they could find such fact, required too much, a mere preponderance of the evidence being sufficient. *Telford v. Frost*, 76 Wis. 172; *Whitney v. Clifford*, 57 id. 158; *Washington Union Ins. Co. v. Wilson*, 7 id. 169; *Blaeser v. M. M. Mut. Ins. Co.* 37 id. 38; *Quaife v. C. & N. W. R. Co.* 48 id. 520; *Wright v. Hardy*, 22 id. 356; *Mo. Pac. R. Co. v. Bartlett*, 81 Tex. 42; *Allen v. Murray*, 87 Wis. 41; *Mitchell v. Hindman*, 150 Ill. 538; *Comm. v. Webster*, 5 Cush. 314; *Comm. v. Costly*, 118 Mass. 1; *Sullivan v. State*, 52 Ind. 309; 3 Greenl. Ev. § 29, note 2.

For the respondents there was a brief by *Catlin & Butler* and *Carl C. Pope*, attorneys, and *Thomas Wilson* and *S. L. Perrin*, of counsel, and a supplemental brief by *Mr. Wilson*, and the cause was argued orally by *Mr. Pope* and *Mr. Wilson*.

The following opinion was filed October 2, 1894:

WINSLOW, J. The grounds of negligence claimed by the plaintiff were failure to fence the right of way and failure

to give signals of the movement of the cars, as well as failure to keep a proper lookout. The verdict of the jury establishes the fact, in answer to the first three questions, that the train was negligently moved when the plaintiff was injured; but in response to the fourth question it was found that such negligence was not the proximate cause of the injury. There is nothing inconsistent with this fourth finding elsewhere in the verdict, nor is it claimed that any material fact in controversy was not submitted to the jury; hence it is very clear that if this fourth finding is founded upon sufficient evidence, and no error was committed by the trial court in its submission to the jury, the plaintiff cannot recover. To this question, therefore, we shall address ourselves.

There was but one error claimed in the admission and rejection of evidence, and as that alleged error related solely to evidence bearing on the first three questions, and could have no possible bearing on the answer to the fourth question, it is unnecessary to consider it.

The instructions applicable to the fourth question and to which plaintiff excepted will be given at length. After instructing the jury that the burden of proof with reference to certain questions was on the plaintiff, the court said:

"You are instructed that it is incumbent on the party upon whom the burden of proof rests to establish the existence of a fact in controversy, to satisfy you by a preponderance of evidence that such fact does exist; otherwise, you should find to the contrary. That is to say, you should carefully weigh all the evidence produced by both parties bearing on any such controversy, and determine upon which side such evidence preponderates, if you can. If the same is so evenly balanced that you cannot determine on which side the same preponderates, or if you conclude that the preponderance of evidence is against the party on whom the burden of proof rests, or if, notwith-

Pelitier vs. Chicago, St. Paul, Minneapolis & Omaha R. Co. and another.

standing there is to your minds a preponderance of evidence tending to establish a fact in controversy, you are yet not satisfied of its existence, your finding should be against the party on whom the burden of proof rests. Such finding should be in favor of the side on which the burden of proof rests only when you are satisfied that the preponderance of evidence in respect to the controversy tends to establish the existence of the fact involved, and you are satisfied to a reasonable certainty that the fact does exist which such preponderance of evidence tends to establish. You are further instructed that the term 'preponderance of evidence,' as here used, does not necessarily mean the greatest number of witnesses. It frequently happens that there are more witnesses on one side of a controversy than on the other, yet the greatest weight of evidence be on the side of the lesser number of witnesses; and in all such cases it is the weight of evidence that counts and should govern the finding of a jury. Keep in mind what is here said in regard to the degree of certainty to which you should arrive in respect to the existence of a fact in controversy in order to warrant a finding in favor of the party on whom the burden of proof rests, and the explanation of the term 'preponderance of evidence,' and apply the same to each question submitted. . . .

"The fourth question, which is as follows: 'If to the third question you say "Yes," was such failure to exercise ordinary care and prudence the proximate cause of the injury complained of?' is a very important one in the case; for whatever failure of duty there may have been on the part of the trainmen, if such failure was not the proximate cause of the injury, then such injury cannot be attributed, in a legal sense, to any failure of duty on the part of the railway company; and to make it respond in damages to the injured party would, under such circumstances, be robbery, under the forms of law. Generally speaking, as the

term 'proximate cause' is used in the question, it means the
first or the efficient cause, the cause acting first and directly
producing the injury, or which sets other causes in motion
producing such injury; there being an intimate and close
causal connection between such first cause and the final re-
sult.  In either case such producing cause is held to reach
to the injury, and to be, in a legal sense, proximate to it;
but you are instructed in this connection that, in order that
want of ordinary care on the part of the trainmen may be
found to be the proximate cause of the injury, it is not
enough to show, and for the jury to find, that such injury
was a consequence of their acts; but, to warrant such find-
ing, it must appear to your satisfaction, from a preponder-
ance of evidence, that it might reasonably have been ex-
pected by such trainmen, in the exercise of ordinary care
as men of intelligence having the knowledge that they may
be reasonably expected and ought to have had in doing
such work, that such accident might probably result from
their conduct.  If you do not find such to be the fact, or
if you find, under all the circumstances, that, though the
trainmen had exercised ordinary care, the accident would
probably have happened just the same, then you cannot
say that want of ordinary care on the part of such train-
men was the proximate cause of the accident.  To illus-
trate: If the trainmen, in the exercise of ordinary care,
before moving the cars should have blown the whistle and
rung the engine bell, and they omitted so to do, yet the
child was so young that he probably would not have under-
stood such signal and retired out of the range of danger,
and the person in charge of the child would not, in the ex-
ercise of ordinary care, have had time to have rescued the
child from the place of danger before the car struck him, or
have kept him out of such danger, and you so find the fact
from the evidence, then you cannot say that want of ordi-
nary care on the part of the trainmen in omitting such sig-
nal was the proximate cause of the injury.  Bear in mind,

in considering this question, that there is no evidence to show that the trainmen knew the child was on the track or near it; but whether they might have known such fact by the exercise of ordinary care, and omitted to exercise such care, is for your consideration."

The errors which appellant claims in these instructions will be considered in their order.

1. It is claimed that it was error to say that the jury must be satisfied by the preponderance of the evidence, to a reasonable certainty, that a fact existed, before they could could find such fact; and it is said that this expression means practically the same as the expression "satisfied beyond a reasonable doubt." The expression used by the court was criticised in *Allen v. Murray*, 87 Wis. 41, but it did not become necessary to pass upon it in that case. We have examined the question, and are satisfied that the instruction is not erroneous. In the case of *Beery v. C. & N. W. R. Co.* 73 Wis. 197, an instruction that the jury must feel "reasonably certain" of a fact on which plaintiff's case depended was held correct; and it was said that this did not mean that the proof must be clear and most satisfactory, but only that "the preponderance of the evidence must convince their judgment of the truth of the fact found." In *Gores v. Graff*, 77 Wis. 174, an instruction to the effect that there need only be "a fair preponderance of the evidence tending to show the existence of a fact," was distinctly disapproved; and it was held that the instruction should have been that, "if the jury were *satisfied* by a preponderance of the evidence that all the facts essential to a recovery were proved, they should find for the plaintiff." The instruction in question here seems to be entirely justified by the doctrines laid down in these two cases. It is very pertinently said by Mr. Justice LYON in the last-named case that "there may have been a preponderance of evidence tending to prove such facts, or some or all of them, and yet the evidence be quite insufficient to

prove those facts." A verdict in favor of the party who has the burden of proof in any case is a solemn determination that certain facts exist. Should such a determination be made merely because the evidence upon one side is a trifle weightier than that upon the other, when the evidence is so unsatisfactory that the judgment of the jury is not satisfied nor the reason convinced of the existence of the facts? We think not. The expression frequently used by the trial courts and frequently announced by appellate courts is that the minds of the jury must be satisfied or convinced by the preponderance of the evidence of the existence of a fact. *Whitney v. Clifford*, 57 Wis. 156. When the mind is satisfied or convinced of the existence of a fact, is not the mind reasonably certain of the fact? It seems to us that this question must be answered in the affirmative. Expressions may be found in text-books and decisions to the effect that a mere preponderance of the evidence is all that is required in civil cases, but it will be found that this principle is generally laid down in contradistinction to the rule of proof in criminal cases. *Whitney v. Clifford, supra.* In a general way this statement of the rule is correct, but that does not make the amplification of the rule as given in this case incorrect. *Telford v. Frost*, 76 Wis. 172, was much relied on by appellant, but examination of the case clearly shows that the question here raised was not there presented. The only question there presented was as to the correctness of the general charge that the verdict must be in accord with the greater weight of evidence, and no request was made to charge the jury more specifically. Upon principle and authority, therefore, we hold that the charge of the court upon this subject, though expressed more strongly and emphatically than is usual or perhaps advisable, was not error. •

2. It is claimed that it was error for the trial court to charge the jury that, if the negligence of defendant's serv-

Pelitier vs. Chicago, St. Paul, Minneapolis & Omaha R. Co. and another.

ants was not the proximate cause of the injury, it would be robbery, under the forms of law, to compel it to respond in damages to the injured party. We perceive no error in this statement. This cannot be fairly understood as an intimation that the plaintiff is seeking to rob the defendant, but rather as a timely caution to the jury in a case where human sympathy would naturally tend to lead the judgment astray.

3. It is claimed that there was error in the definition of proximate cause. The only error pointed out is that in the illustration given to the jury the element of the want of a lookout on top of the car is left out. The jury had been previously fully and correctly charged, in connection with the third question, as to the duty of the company to keep a lookout in such a place as the one in question. The remarks excepted to were simply by way of illustration of the meaning of the term " proximate cause," and did not purport to state the whole case. Furthermore, the instruction closes with the caution that the question whether the trainmen might have known that the child was on or near the track, by the exercise of ordinary care, and failed to exercise such care, is for the consideration of the jury. This plainly left to the jury the question whether a proper lookout would have avoided the accident. We see no error here.

We have reviewed the only questions which require attention as to the correctness of the fourth finding, and find no error. There was sufficient evidence upon which the jury might properly find that no signals or lookouts would have been of any avail in avoiding the accident. This renders unnecessary the discussion of the question whether the contributory negligence of the mother would defeat the plaintiff's recovery.

*By the Court.*— Judgment affirmed.

A motion for a rehearing was denied November 13, 1894.