## GLASS *v.* BENNETT.

## (*Nashville.* January 8, 1891.)

1. **EVIDENCE.** *Corroborating witness by proof of his previous consistent statements.*

   Where witness is assailed by proof tending to show his statement on oath a recent fabrication or inconsistent with his previous representations, it is competent to support his credit by proving that he gave the same account of the transaction at a time when he had no motive to misrepresent the facts. Examples of the proper application of this rule occur in this case.

   Case cited and approved: Hayes *v.* Cheatham, 6 Lea, 10.

2. **SAME.** *Res gestæ. What admissible under.*

   In husband's suit to recover damages of wife's father and brother for wrongfully causing separation and estrangement of his wife, it is competent, under issue made by plea of not guilty, to prove as part of the *res gestæ* all declarations of the wife explanatory of her mental trouble, and of her conduct in leaving and remaining away from her husband, whether made at the time of the separation or subsequently while it continued, and whether made to her husband, her physician, members of her father's family, or to strangers.

3. **DOMESTIC RELATIONS.** *Parent and child. Husband and wife. Brother and sister.*

   "The father and brother are natural protectors of the daughter and sister." The father may lawfully give honest advice to his married daughter who comes to him in distress growing out of unhappy marital relations, and he may shelter her in his own home so long as she freely remains.

   Case cited and approved: Payne *v.* Williams, 4 Bax., 585.

4. SUPREME COURT PRACTICE.   *Transcripts.   Clerk's fees.*

Hereafter clerk's fees for making transcripts of record for this Court will be stricken, out if the work is not done in a proper manner.

Cited: Rules, 85 Tenn., 751.

5. SAME.   *Suggestion as to making bills of exceptions.*

Bill of exceptions in a law case should not contain full report of the evidence in all its details, but only such facts as are material with reference to the questions to be made in this Court.

---

### FROM WILLIAMSON.

---

Appeal in error from Circuit Court of Williamson County.   W. K. McALISTER, J.

JESSE G. WALLACE, DEMOSS & MALONE, and HEARN & BERRY for Glass.

H. P. FOWLKES, THOMAS & HOUSE, JOHN H. HENDERSON, and N. N. COX for Bennett.

TURNEY, Ch. J.   This suit began in the Circuit Court of Williamson County on December 27, 1889.   The cause of action is digested by Bennett's attorneys as follows:

"*First Count.*—That on the — day of March, 1889, the plaintiff being a married man, as he had been since May 18, 1881, and living with his

wife, Laura Bennett, who was the daughter of Defendant S. F., and sister of Defendant W. H. Glass, enjoying the comfort, affection, companionship, and service of his said wife, and having a household, the said defendants conspiring together and intending to prejudice and aggrieve the plaintiff as such husband, and deprive him of the comfort, affection, etc., of his said wife, wrongfully and unjustly intending to break up plaintiff's household, and to degrade and injure him in the esteem of his neighbors and of the public, * * * did unlawfully, wrongfully, and unjustly entice, persuade, and procure said Laura Bennett * * * to depart from and out of the companionship and service of the plaintiff, by means of property, in order to render plaintiff houseless and homeless, and by false and untrue statements concerning plaintiff, made by them to plaintiff's wife and others, derogatory of plaintiff's character, intending to bring the plaintiff into disrepute and disgrace in the estimation of his wife, and did thus alienate and destroy the love and affection of his wife for him, and caused her to abandon him and take with her their only child, thus destroying the happiness, peace, comfort, and family relations of plaintiff, and depriving him of the society of his wife," etc.

The defendants plead not guilty, upon which issue is joined.

There was a trial before a jury in the Circuit Court of Williamson County, at the April Term,

1890, and .a verdict was rendered in favor of the plaintiff in said Court and against defendants for twenty thousand dollars.

On the motion for a new trial the Circuit Judge, having intimated that he entertained doubts as to the excessiveness of the verdict, plaintiff entered a *remittitur* of $7,500. Thereupon the motion for a new trial was overruled, and defendants appealed.

On the trial Mrs. Bennett, wife of plaintiff, testified that she followed her husband to the front gate and up the pavement, begging him to promise her that he would not take her daughter Agnes from her if she brought her home, and that he would not make the promise.

The husband denied the statement. It was proposed, then, to prove by Mrs. Richardson that she saw Mrs. Bennett follow her husband, and heard her begging him piteously to tell her something, she did not hear what. She afterward asked Mrs. Bennett what she was begging him for, when she told her as Mrs. Bennett stated on the witness-stand.

On objection, the evidence was ruled out. This was error. "The rule is, that when it is attempted to be established that the statement of a witness on oath is a recent fabrication, or when it is sought to destroy the credit of the witness by proof of contradictory representations, evidence of his having given the same account of the matter at a time when no motive existed to misrepresent

31—5 P

the facts ought to be received, because it naturally tends to inspire confidence in the sworn statement." 6 Lea, 10.

The declarations of Mrs. Bennett, made at the time she left her home, explanatory of her troubled mental condition and of her reasons for going to her father's house with her child, are competent as parts of the *res gestæ*, and also to corroborate her when the effort has been made to discredit her statement as a witness.

Mrs. Bennett's declarations to her father, mother, and brother, or others, assigning causes for leaving her home and returning to her father's, and remaining there, are competent, going to establish or disprove a justification on the part of the defendants, or either of them, in advising her, if they did so, to remain away from her home and husband.

Any advice given to the husband to leave Mrs. Bennett and go to Texas, if communicated to her and not repelled at the time by him, especially if given before the separation, is competent.

Every thing that can legitimately inculpate or exculpate the father and brother on the one part, or the husband and his sisters and brothers-in-law on the other, is competent for the consideration of the jury in the trial of the facts raised by the issues.

It will be proper for the jury to consider of the hypothesis of the guilt of the father and brother, or either of them, in connection with one of the guilt of any other person or persons.

The question is, What brought about the estrangement and separation? whose advice and conduct accomplished them? Was the fault in the husband, because the father was unwilling to intrust him with the control of property intended for the daughter? Was property the incentive to the husband to live with and properly treat and respect the wife? Was the exercise of ownership by the father the cause of the husband maltreating his wife? If so, the blame is with him, and the father and brother are justified in protecting and providing for the wife.

All these questions are presented by the record, and whatever throws light upon them from the conduct of kinsman or stranger is matter of legitimate inquiry.

The father and brother are natural protectors of the daughter and sister.

In *Payne* v. *Williams*, 4 Bax., 585, Judge Deaderick, delivering the unanimous opinion of the six Judges, said:

" There can be no law to restrain the parent from honestly and sincerely endeavoring to protect his daughter, by means of counsel and warning, from impending ruin or disgrace or wreck of her happiness or usefulness for life. There is a marked distinction between the rights and privileges of a parent in such cases and those of a mere intermeddling stranger. A father has no right to restrain his daughter from returning to her husband if she desires to do so. On the other

hand, he may lawfully give counsel and honest advice for her own good, and shelter her in his own house if she chooses to remain with him." Citing Schouler on Dom. Rel., 57, 58; 21 Barb., 439; 5 John., 196.

We adhere to this statement of the doctrine, and heartily approve it.

Under this rule, if the father, after hearing the complaint of the daughter, gave her counsel and honest advice for her own good, as he believed it to be, and sheltered her in his own house, she choosing to remain with him, he violated neither law nor morals, but did just what any honest, good father, with any of the spirit of a true man, will always do—a course of conduct that cannot and should not be discountenanced by legislation or adjudication. The law of natural affection and natural duty is a higher law that will not submit to a remolding by human agencies. The right of the father to give honest advice to and shelter his daughter conserves the peace; take it away, and homicide may become its successor.

It was error to withdraw from the jury the statement of Dr. Clift as to the mental and physical condition of Mrs. Bennett in spells of sickness in which he was her attending physician, as, in connection with other facts stated by him, it tended to show that the indifference and inattention of the husband induced or provoked the mental depression of the wife, and, to that extent, fortified the theory of the defense that Mrs. Ben-

nett was driven from her home by the unkind treatment and neglect of her husband.

The proof shows that Bennett repeatedly threatened to take the child and go to Texas. It was error to sustain an objection to a question to Bennett as to whether his sister had not advised him to do so. The testimony was competent under the rule already stated as well as to sustain Mrs. Bennett, who had so testified.

As this record presents the facts, we see no sufficient evidence to support the verdict.

This is a proper case in which to call attention to the rules for making the transcripts for this Court. 1 Pickle, 751. Over one thousand pages of this record are type-written. Very much of it is so written as to make it almost impossible to be read; much of it so dim that it can only be read by daylight. In many instances the letters are about half formed. We have had a great deal of such annoyance lately, and we call attention to it now that clerks may look to their interests as well as duty. In the future no fees will be allowed for such transcripts.

It seems that the evidence was taken down by short-hand, and then copied as a bill of exceptions. It gives, at the lowest estimate, twice the amount of reading matter necessary to be brought to this Court, besides imposing unnecessary expense on the litigants. It was the duty of the attorneys to have gone over the copy and extracted from it such facts as were material to bring the issues

properly before the Court, and no more. The business of the Court is too large to require the Judges to wade through the vast amount of immaterial matter to reach the merits.

Often matter that could be readily stated in a half-dozen lines is spread over as many pages. Every question, every remark, is copied, and the Court is required to do, in a press of work, the labor the lawyer could have done at leisure, and which it was his duty to do.

For the errors of law indicated the judgment is reversed, and the cause remanded.