## F. M. LEGERE v. STATE.

### (Knoxville. September Term, 1903.)

1. **EVIDENCE. Consistent statements are inadmissible where contradictory statements are proved, when.**

   It is a general rule that where evidence of contradictory statements is offered to impeach the credit of a witness, evidence of statements made by him on former occasions consistent with his evidence are inadmissible. (*Post, p.* 373.)

2. **SAME. Consistent statements made before a motive are admissible, when.**

   But where it is charged that the evidence of the witness is a recent fabrication, and is the result of some relation to the party or cause, or of some motive of personal interest, his evidence may be supported by showing that he had made a similar statement before that relation or motive existed. (*Post, p.* 373.)

3. **SAME. What confirmatory statements are admissible, when.**

   Where a witness is impeached by evidence of contradictory statements, his confirmatory statements made at a time when no motive existed to misrepresent the facts are admissible in evidence for whatever support they may give the impeached witness. (*Post, pp.* 373-374.)

   Cases cited and approved: Dosset v. Miller, 3 Sneed, 76; Queener v. Morrow, 1 Cold., 11; Bank v. Robinson, 1 Bax., 479; Hayes v. Cheatham, 6 Lea, 2; Glass v. Bennett, 89 Tenn., 478; Graham v. McReynolds, 90 Tenn., 674.

4. **SAME. Confirmatory statements made after contradictory statements are inadmissible.**

   Confirmatory and consistent statements made by the witness after the contradictory statements were made are inadmissible to support his so impeached testimony. (*Post, pp.* 374-376.)

   Cases cited and approved: Queener v. Morrow, 1 Cold., 11; Spurlock v. Brown, 91 Tenn., 240; Ellicott v. Pearl, 10 Pet., 416; Conrad v. Griffey, 11 How., 481.

Legere v. State.

5. **ALIBI. REASONABLE DOUBT. Charge that defendant should
be acquitted, when.**

Where the evidence in a criminal case fairly raises the defense of
an *alibi*, the jury should be instructed that if this evidence, in
connection with the other evidence in the case, raises a rea-
sonable doubt as to whether the accused was at the place of
the homicide, or at a ·different place, the defendant should be
acquitted.   (*Post, pp.* 376-377.)

Cases cited and approved:   Davis v. State, 5 Bax., 617; Wiley v.
State, 5 Bax., 662; Jefferson v. State, 3 Shannon's Tenn. Cases,
330.

6. **NEW TRIAL.**   Grant of appeal to be set aside to act on mo-
tion for.

Where a motion for a new trial in a criminal prosecution is made,
in proper time, upon the ground of misconduct of the jury in
separating, and of the officer in charge thereof in permitting
the separation, and a proper case is presented for the exercise
of the trial judge's discretion, but he refuses to exercise it,
upon the ground that the motion came too late, and at a time
when his jurisdiction over the case had been exhausted, be-
cause judgment had been entered, and sentence passed, and an
appeal granted, he is in error.   In such case, the whole matter
is in the breast of the court, and the proper practice is to set
aside the order granting the appeal, and then exercise the dis-
cretion. ·   (*Post, pp.* 378-379.)

7. **SAME.**   Same.   Time to prepare affidavits: case in judgment.

Application for time, before the adjournment of court, in which
to prepare affidavits laying grounds for the motion as stated in
the last foregoing headnote, where there is no appearance of
bad faith on the part of counsel in making the motion, and it
being stated that knowledge of the fact of separation had just
come to them, it is a proper case for the court to exercise its
right to set aside the grant of appeal, and to give an oppor-
tunity to defendant to submit affidavits.

`111 Tenn—24

Legere v. State.

FROM HANCOCK.

Appeal from the Circuit Court of Hancock County.—
C. J. St. John, Judge.

H. T. Coleman, R. L. Davis, L. M. Jarvis, C. W. Mar-
graves, and J. A. Susong, for Legere.

Attorney-General Cates, and Coleman & Coleman,
for the State.

Mr. Chief Justice Beard delivered the opinion of the
Court.

The plaintiff in error was jointly indicted with one
Perry Meyers for the killing of John Davis and Grant
Seals on the evening of the seventh of June, 1902.   Sub-
sequently Meyers asked a severance, which was granted
him by the court. About the same time the State entered
a *nolle prosequi* as to the killing of Grant Seals, and then
placed the plaintiff in error on trial alone for the homi-
cide of John Davis, the result of which was his convic-
tion of murder in the first degree.   Motion for a new
trial having been overruled, the case has been appealed
to this court, and many errors are assigned upon the
action of the circuit judge.

Legere v. State.

The verdict in the case rests largely upon the testimony of Perry Meyers, who was used by the State as a witness. An examination of the record satisfies us, if not essential to sustain the theory of the State, that at least this testimony was very important to it. This being so it was proper, under the peculiar circumstances of the case, while the State had the full benefit of it, under an application of the rules of law, yet the plaintiff in error should be safeguarded so that undue weight be not given to it.

Immediately after the killing of Davis and of Seals, the record discloses that both Legere and Meyers were arrested upon a warrant charging them with the murder of these men. At the coroner's inquest held the day following the arrest, Meyers testified he had been with Legere and the deceased during the day of the killing, but that neither he nor Legere had anything to do with it. Subsequently, upon the preliminary examination before a magistrate, he was examined, and again, under oath, reiterated the statement as to the innocence of himself and of Legere of the crime charged against them. On both occasions he gave a detailed account of what occurred while in company with the murdered men, and of the separation of Legere and himself from them while they were still alive, and of their acts and movements during the evening and night following this separation.

As a result of this preliminary examination, both these parties were held to answer the charge of murder

at the next term of the circuit court of Hancock county, at which time the joint indictment was found against them. After this, and before the trial took place, Meyers was in some way released from jail, where he had been for some months confined upon this charge. Soon after his release, negotiations were entered upon by his father and himself with the prosecutor, which resulted in an agreement that, in consideration of his turning State's evidence against Legere, as far as the prosecutor could control the matter Meyers should be relieved of any further prosecution for this offense; and at the same time a bond was executed to the father in the penalty of $1,000, by the prosecutor and a surety, in which they undertook to prevent all further criminal procedure looking to the conviction of the son. Thus assured, Meyers became a witness for the State, and on the trial of the case testified that Legere killed Davis and Seals about dusk on the evening of the seventh of June, 1902, using his own gun for the purpose of shooting Seals, and that he then violently took from the witness a Smith & Wesson revolver, with which he shot Davis to death, and, turning, finished Seals, who was still alive.

He further swore that the testimony which he had given under oath at the coroner's inquest and the preliminary examination as to the innocence of Legere was given under duress, that, immediately following the homicide, Legere had extorted from him a promise to testify as he did, under a threat that he would kill him

if he did otherwise.   For the purpose of corroborating this testimony as to the killing by Legere, the State, over the objection of the counsel for Legere, was permitted to show by the father and by the sister of the witness that after his release from incarceration, and evidently at or about the time he was negotiating for relief from prosecution, he gave to them practically the same account as to the killing by Legere of these parties as was detailed by him on the witness stand.

The action of the court in admitting this corroborative testimony has been made a ground for the first assignment of error in this court.   That there was error in this, we have no doubt.   The general rule is, where evidence of contradictory statements is offered to impeach the credit of a witness, testimony that on former occasions he made statements consistent with those made by him on the witness stand is inadmissible.   This seems to be the rule in England at this time.   The courts in America have grafted certain exceptions upon this rule, and so fixed are they that it may be considered now that of themselves they constitute an independent rule. And so, it may be said, it is now established in this country that where it is charged the testimony of the witness is a recent fabrication, and is the result of some relation to the party or cause, or of some motive of personal interest, it may be supported by showing he had made a similar statement before that relation or motive existed.    However little support such testimony may give to the impeached witness, yet it has been held to be

competent upon the ground that the consistent statement had been made at a time that there was little, if any, temptation to speak an untruth with regard to the matter afterwards brought into controversy. The rule embracing these exceptional cases has been frequently recognized in this State; but in no case, so far as we have been able to discover, has the corroborative testimony been admitted where it was clear the statement so relied upon was made at a time when it was to the interest of the witness to make a false statement, and his probable motive was to use it in fortifying himself when attacked or impeached. We have a number of cases where such confirmatory evidence as this has been allowed, expressly or by necessary implication, upon the ground that such statements were made at a time when no motive existed to misrepresent the facts. *Hayes* v. *Cheatham,* 6 Lea, 2; *Dosset* v. *Miller,* 3 Sneed, 76; *Queener* v. *Morrow,* 1 Cold., 11; *Third Nat. Bk.* v. *Robinson,* 1 Baxt., 479; *Glass* v. *Bennett,* 89 Tenn., 478, 14 S. W., 1085; *Graham* v. *McReynolds,* 90 Tenn., 674, 18 S. W., 272.

While it "sometimes is a matter of nice judgment to determine that no motive existed at a given time to misrepresent the facts" (*Spurlock* v. *Brown,* 91 Tenn., 240, 18 S. W., 868), it is not so in the present case. At the time these statements relied upon as being confirmatory were made, there was every temptation for the witness to falsify the facts. He was still in the hands of the law, resting under an indictment for this murder, and

was seeking to make an arrangement by which, upon furnishing testimony to the State, he could escape its meshes.    In addition, they were incompetent because made at a time later in date to that at which the contradictory declarations were made.  *Conrad* v. *Griffey,* 11 How., 481, 13 L. Ed., 779; *Ellicott* v. *Pearl,* 10 Pet., 416, 9 L. Ed., 475.

The inadmissibility of such testimony is clearly announced in *Queener* v. *Morrow,* supra.    That was a case where an effort was made to corroborate two witnesses who were assailed upon the ground of their general bad reputation, and also by proof of previous contradictory statements.    To sustain their credit, the plaintiff, who had produced them as witnesses, was permitted to show previous declarations consistent with those given in evidence, but made subsequent to the contradictory statements in question.

The court, after agreeing to the reasonableness of the rule as to the admission of such testimony within proper limitations, said :    "To allow consistent statements, for the purpose of giving support to the credit of the witness, made after the contradictory representations by which it is sought to impeach him, would be to put it in the power of every unprincipled witness to bolster his credit, and perhaps escape the just consequences of his own false representation and tergiversation.    And it would be still worse to hold that the statement of an arraigned felon, *in vinculis,* offered, perhaps, as a bribe to his discharge, and made after the contradictory state-

ment proved against him, and at a time when he was laboring under a motive to misrepresent the facts, might be received. This cannot be allowed, because of its tendency to corrupt the administration of justice, as well as the inherent absurdity of such a principle."

Upon reason as well as upon authority, we hold the exception made to this testimony by the plaintiff in error was well taken, and that the circuit judge was in error in permitting it to go to the jury.

We think the circuit judge was also in error in his instruction to the jury as to the effect of testimony submitted by the defendant below as to his defense of an alibi. On this subject his charge was as follows: "The defense of an alibi is very conclusive, if certainly, clearly, and fully established; but it can only be conclusive when taken as true, and it is shown that there was no possibility of presence at the time or place of offense, when that is necessary. The defense of the alibi is liable to abuse not only when a design exists to practice a fraud on the State, but often, where that design does not exist, by ignorant mistakes as to the particular hour at issue, and by reason of lapse of time; and I therefore caution you against this abuse to which the defense is exposed. The evidence of an alibi does not exclude the absolute possibility of presence at the time and place of the offense, to be of some value. It can be admitted and considered for what it may be worth. If it renders it very improbable that defendant could have been present, it should be considered, in connection with

the other evidence in the case, in determining whether or not there is a reasonable doubt of defendant's guilt."

It is insisted that this instruction was vague and misleading, and that parts of it were the equivalent of telling the jury that they must be conclusively convinced that the defendant was not present at the commission of the crime alleged, and that it was incumbent on the defendant to show conclusively that it was impossible for him to have been present at the time and place, before this defense would be of any avail. While we do not think the instruction is amenable to the severe criticism to which it has been subjected, or that any part of it, when taken in its proper connection, will bear the construction thus put upon it, yet we do not think, in view of the fact that the defense rested largely upon the claim of an alibi, and there was much testimony tending to support this claim, the law on this subject was as distinctly put to the jury as the defendant had a right to demand. The rule on this subject as laid down in *Davis* v. *State,* 5 Baxt., 617, *Wiley* v. *State,* Id., 662, and *Jefferson* v. *State,* 3 Shannon's Cas., 330, and approved in many other cases, is that, "where the proof fairly raises the defense of an alibi, the jury should be instructed that if this proof, in connection with the other proof in the case, raises a reasonable doubt as to whether the accused was at the place of the homicide, or at a different place, the defendant should be acquitted." As has been said, "This is a sound rule, and ought to be given to the jury in direct and unequivocal language."

Error is also assigned upon the action of the trial judge in declining to entertain a motion for a new trial, upon the ground it came too late, and at a time when the jurisdiction of the trial judge over the case had been exhausted. It seems from the record the jury returned a verdict of guilty on the morning of the twenty-fifth of July, 1903, and at 11 o'clock of that morning the defendant moved the court for a new trial upon the ground of misconduct of the jury in separating, and of the officer in charge thereof in permitting the separation, and asked the court to grant counsel for the defendant time, before the adjournment of the court, in which to prepare affidavits laying ground for this motion. This the court refused, giving as a reason for this refusal that judgment had been entered, and sentence passed, and an appeal granted to this court.

There can be no doubt the trial judge was in error in supposing his jurisdiction over the case was exhausted by the grant of an appeal. The whole matter was still in the breast of the court, and the proper practice would have been for him to have set aside the order granting the appeal, and to have given time to the counsel to present their affidavit showing, if they could, the separation of the jury during their consideration of the case. There being no appearance of bad faith upon the part of counsel in making this motion, and it being stated that knowledge of the fact of separation had just come to them, it was a proper case for the court to have exercised its right to set aside the grant of appeal, and to give an

Legere v. State.

opportunity to the defendant below to submit affidavits. Failing to do this, and placing it upon the ground that he had no right to exercise his jurisdiction, the learned trial judge committed an error. On this point we put our holding—not upon the ground that he abused his discretion, but, rather, that, having this discretion, he failed to exercise it upon the erroneous idea that he had none.

We do not consider other assignments that are made, as for these already indicated there must be a reversal and remand.