JONES, Respondent, vs. MONSON and wife, Appellants.

*December 19, 1908—January 5, 1909.*

*Pleading: Construction: Conspiracy: Civil liability: Alienation of affections: Husband and wife: Disabilities: Torts: Crimes: Presumption of coercion: Parent and child: Advice to child as to relations with her husband: Appeal and error: Trial: Requests for instructions to jury: Requisites of charge to jury: Burden of proof: "Establish:" Harmless error.*

1. In the construction of a pleading for the purpose of determining its effect its allegations should be liberally construed, with a view to substantial justice between the parties.
2. Criticisms of a pleading will not support a challenge for insufficiency if sufficient can be discovered, reasonably, by judicial construction to sustain it. The sole test is, Will the language used permit of a reasonable construction which will sustain the pleading?
3. A complaint, after stating in appropriate language the formation of a conspiracy to injure by depriving plaintiff of the affections and society of his wife, charged that defendants so wrongfully conspiring "did finally acquire, from bad and improper motives and malicious, false insinuations, such influence over plaintiff's said wife, and defendants used such influence to the extent that the love, affections, and respect of plaintiff's said wife for plaintiff had been wholly alienated and destroyed." This was followed by allegations of specific malicious acts for the purpose, as stated, of "forcing and driving plaintiff away from his said wife and child," and so resulting, concluding with the charge "that by carrying out such malicious conspiracy plaintiff has been wrongfully and maliciously deprived of his wife's affections, society, comfort, and assistance." *Held*, that the complaint sufficiently alleged that the wrongful acts were perpetrated pursuant to a wrongful combination, and that such purpose was accomplished.
4. The doctrine that a wife is incapable of being guilty of a wrong jointly with her husband because of the ancient presumption that what a wife does in that regard in her husband's presence, or so near by as to be under his influence, is presumed to be under coercion of his will, so far as it once existed and is not obsolete, relates to a mere rebuttable presumption, not disability.
5. The common-law doctrine undisturbed by statute, that a husband and wife by themselves cannot be guilty of a criminal offense when the gist thereof is conspiracy, does not go to the extent

of exempting the wife from the consequences of criminal acts in execution of a conspiracy jointly with her husband which are of themselves subjects of criminal prosecution.

6. There is no such thing as a civil action for conspiracy. An action lies for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone.

7. In a civil action for damages for an executed conspiracy the gist of the wrong is the damages. The combination may be of no consequence except as bearing upon the rules of evidence.

8. The alienation of a wife's affections is such a wrong that a husband and wife, accomplishing it by concert of action, may be both liable for the resulting damage.

9. What a father and mother may do in relation to their daughter continuing to reside with her husband, without inference of bad intent arising therefrom, is quite different from what a stranger may safely do as regards such interference.

10. The relations of parent and child in their moral aspects, and legal as well, begin at the inception of the child's life and do not wholly end until life ends, and those relations carry with them certain duties and privileges as to advice and protection and helpfulness in case of need, the observance of which is so natural, so laudable, and so essential to the family happiness and welfare that acts ostensibly promotive thereof are not to be lightly held to have had a wicked purpose for their mainspring.

11. In actions by a husband against a wife's parents for alienating the wife's affections, the true test to be applied to the evidence is: Were the parents in what they did actuated with reasonable parental regard for their child, or were they actuated by unreasonable ill will towards the husband or the wife, as the case may be? If the former and they yet, from the standpoint of a better or the best judgment, were wrong, excusably mistaking the true situation, the resulting injury is *damnum absque injuria*.

12. It is not error to refuse requested instructions applicable to the case which were substantially covered in the general charge.

13. A charge to the jury is not required to contain a discussion of the evidence in connection with the legal propositions applicable thereto.

14. A charge to the jury is not required to state a proposition more than once, nor adopt any particular phrasing of a proposition by counsel.

15. In instructions to the jury it is not advisable to state any legal proposition applicable to the evidence in an argumentative way.

16. In instructing the jury it is not necessary to enlarge upon the importance of a particular proposition in its moral or other aspects.

17. In an action by a husband for damages caused by an executed conspiracy by the wife's parents to alienate her affections and deprive her husband of her society and assistance, the court instructed the jury that "acts of parents" under the circumstances of the case "are presumed to be in good faith and for the purpose of promoting the child's welfare unless the contrary is established by the evidence." "So that to recover it is not only necessary to establish by a preponderance of the evidence that the parents brought about the" result complained of, "but in so doing they acted maliciously, that is in bad faith, not with a view of promoting the daughter's welfare." "If parents who have knowledge of a child's actual situation act in the honest belief that a course taken or advised is for the child's welfare, their acts cannot be deemed malicious, although such conduct in fact appears detrimental to the child's interests." *Held*, that the language, while rather restrictive, was in favor of the parents and hence not prejudicial.

18. In such instructions the use of the words "knowledge of the child's actual situation," instead of "knowing or reasonably apprehensive of the child's needs," or words of similar import, showing that the parents may advise upon reasonable appearances of necessity therefor as well as upon actual knowledge, if error at all, is error in the parents' favor.

19. In an action by a husband for damages for alienating his wife's affections, declarations of the wife made out of court long after the alleged wrongful act was done are not evidence against the husband, and do not suggest an instruction directing the jury to consider advice or statements made to the wife subsequent to the separation.

20. It is not error as against the defendant to instruct the jury that the burden of proof is on the plaintiff to "*establish* the facts essential to his cause of action by a preponderance or greater weight of evidence."

21. The word "establish," as applied to the quantum of evidence necessary to warrant the existence of a fact in issue, is more appropriate to a criminal than a civil case.

22. Where no punitory damages were awarded by the jury, error in the manner of submitting the question of such damages to the jury was not prejudicial to appellant.

Appeal from a judgment of the circuit court for Columbia county: Chester A. Fowler, Circuit Judge. *Affirmed.*

The appeal is from a judgment of $1,608.20 damages and costs to remedy injuries caused by alienating the affections of plaintiff's wife.

The defendants are husband and wife and parents of plaintiff's wife. Plaintiff's claim was that defendants conspired together with bad intent to deprive plaintiff of his wife's affections and cause her to desert him, and accomplished their purpose by compelling the wife, who with her husband was residing with the defendants and had so resided for a considerable length of time prior to their marriage, to seclude herself and baby girl which had been born to them, from him, and induced her to refuse to speak to him or recognize him as her husband or permit him to pay her or their child any attention and drove him from the house by ill treatment and forbade him to return or come upon the premises, notifying him that the daughter would not go therefrom to live with him.

Defendants answered putting in issue all the allegations of the complaint as to improper treatment of the plaintiff and with bad intent influencing his wife against him.

Upon evidence tending to support the allegations of the complaint the cause was submitted to the jury on the subject of punitory and that of actual damages as well, resulting in a verdict in defendants' favor as to the former but in the plaintiff's favor as to the latter, the damages being assessed at $1,500. Judgment was entered upon the verdict in plaintiff's favor.

*Daniel H. Grady,* for the appellants.

*Henry A. Gunderson,* for the respondent.

MARSHALL, J. The first three assignments of error will be considered together. They involve these subjects: (1) Did the complaint present a case of an executed conspiracy to injure by wrongfully depriving respondent of his wife's affections? (2) Can there be such a conspiracy as between husband and wife? (3) Was there sufficient proof of such a conspiracy as to render evidence of what was said or done by one in the absence of the other admissible against

both?    (4) Was the evidence sufficient to carry the case to the jury on the issue of wrongful intent?

1. No question is raised but that a conspiracy to injure respondent by depriving him of his wife's affections and society was alleged. The infirmity claimed is that the complaint failed to state facts reasonably indicating an execution thereof. In deciding that, the pleading must be tested by the broad liberal rule of the statute that "in the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed, with a view to substantial justice between the parties." Sec. 2668, Stats. (1898). More and more, as time continues, the beneficent purpose of that statute is appreciated and disposition to give it the broadest scope which can reasonably be done is evinced. It is one of the most significant of the indications found throughout the Code that its builders purposed to sweep away, so far as possible, the technicalities and hindrances of common-law procedure; superseding it by a new system as near the ideal as practicable of a plain, simple, easy method of presenting controversies for judicial treatment and the solution thereof—one that would always give dignity to the substance of things, overlooking mere solvable indefiniteness and nonprejudicial imperfections. In harmony therewith it has been iterated and reiterated that "criticisms of a pleading will not support a challenge for insufficiency . . . if sufficient can be discovered, reasonably, by judicial construction to sustain it." The sole test is, "Will the language used permit of a reasonable construction which will sustain" the pleading? *Emerson v. Nash,* 124 Wis. 369, 380, 102 N. W. 921. Failure to appreciate the force of this rule and the extent of the change wrought by the Code, results in waste of energy of counsel, useless expense to clients and to the public.

The complaint after stating, in appropriate language, the formation of a conspiracy to injure by depriving respondent of the affections and society of his wife, charged that the persons so wrongfully conspiring "did finally acquire, from

bad and improper motives and malicious, false insinuations, such influence over plaintiff's said wife, and defendants used such influence to the extent that the love, affections, and respect of plaintiff's said wife for plaintiff had been wholly alienated and destroyed." That is followed by allegations of the perpetration of specific malicious acts for the purpose, as stated, of "forcing and driving plaintiff away from his said wife and child," and so resulting, concluding with the charge "that by carrying out such malicious conspiracy . . . plaintiff has been wrongfully and maliciously deprived of his wife's affections, society, comfort, and assistance. . . ." What more is required? We are unable to suggest anything and counsel fails in that regard, except upon the hypothesis that the complaint does not charge that the alleged wrongful acts were done pursuant to a formed conspiracy to accomplish the result reached. True, the complaint might have been more logically framed. After charging the conspiracy to injure by accomplishing what in fact occurred, the pleader might well have then charged that pursuant to such wrongful conspiracy to injure, with specific malicious intent to effect the purpose thereof, certain acts, specifying them, were done with bad intent, closing with a charge as to the consummation of the conspiracy to the plaintiff's damage. But there is no mistaking the purpose of the pleader to state that the wrongful acts were perpetrated pursuant to the wrongful combination, and that the purpose was accomplished. Moreover, it can hardly be said that rules for judicial construction of a pleading need be resorted to for that purpose, as the quotations we have given clearly indicate. But if it were otherwise the rule for testing pleadings for insufficiency, to which we have referred, easily solves the uncertainty. "All facts," as stated in *White v. White,* 132 Wis. 121, 127, 111 N. W. 1116, a case similar to this, "reasonably inferable from those expressly alleged are to be regarded as efficiently pleaded."

2. We are not familiar with the supposed rule counsel con-

tends for, that a wife is incapable of being guilty of a wrong jointly with her husband because of the ancient presumption that what a wife does in that regard in the husband's presence, or so near by as to be within his influence, is presumed to be under coercion of his will. That doctrine, so far as it once existed and is not obsolete, relates to a mere rebuttable presumption, not disability. *Miller v. State,* 25 Wis. 384; 1 Bishop, New Crim. Law, §§ 356–366.

The common-law doctrine undisturbed by statute, that a husband and wife by themselves cannot be guilty of a criminal offense when the gist thereof is conspiracy, is familiar. 2 Bishop, New Crim. Law, § 187; Wright, Crim. Conspiracies, 221. The basic feature thereof is that a husband and wife are but one, and that since it takes two or more persons to form a conspiracy, the husband and wife alone are incapable thereof but are so when acting with one or more others. That principle by no means goes to the extent of exempting a wife from the consequences of criminal acts in execution of a conspiracy jointly with her husband which are of themselves subjects of criminal prosecution. The parties may be prosecuted jointly with or without any other person being charged, the conspiracy not being the gist of the offense, and both convicted. *State v. Clark,* 9 Houst. (Del.) 536.

The authorities relied upon by the learned counsel and which it seems moved the learned trial court to rule in counsel's favor to the extent of holding that an action for conspiracy will not lie against husband and wife, on the supposition that the complaint in one aspect might be treated as a pleading in an action to remedy such a wrong, are all, so far as any bearing on the question is concerned, criminal cases. There is no such a thing as a civil action for conspiracy. There is an action for damages caused by acts pursuant to a formed conspiracy, but none for the conspiracy alone. When the unlawful combination is the offense, as in criminal prosecutions, then the principle invoked by counsel applies.

*Rex v. Locker,* 5 Esp. N. P. 107; *People v. Miller,* 82 Cal. 107, 22 Pac. 934; *State v. Clark, supra; Kirtley v. Deck,* 2 Munf. 10, 15. These and similar cases are pointless as regards the action here. The last citation was a civil case. The husband and wife were charged with others, and the law that they may be so charged notwithstanding the doctrine of unity was passingly referred to as sufficient for the case. Counsel there argued that the principle now insisted on had no application as the gist of the offense was the damage, not the conspiracy. The court passed that question, the suggestion before indicated being deemed sufficient.

In a civil action for damages for an executed conspiracy, as is very familiar, the gist of the wrong is the damages. The combination may be of no consequence except as bearing upon rules of evidence. *Martens v. Reilly,* 109 Wis. 464, 84 N. W. 840; *State ex rel. Durner v. Huegin,* 110 Wis. 189, 255, 85 N. W. 1046; *Randall v. Lonstorf,* 126 Wis. 147, 105 N. W. 663. The circuit court seems to have thought it was necessary to reject from the complaint as surplusage the allegation to the effect that the defendants conspired together with bad intent to accomplish the wrong. Not so, since the action, as before indicated, was not for the conspiracy but for damages on account of the consummation of the purpose of it, the two acting in concert. That would make a criminal offense before reaching the consummation as to persons not under disability, as stated in *Randall v. Lonstorf, supra.* The disability would not militate against capability of the two in concert to wrongfully damage the intended victim and become responsible to him therefor. The rule of evidence, as in any ordinary case of a wrongful act committed pursuant to an agreement to do it, would apply. It is sufficient, if actual damage is the result, for a remediable wrong. In that case whether one or more are concerned may be immaterial to the cause of action, but whether there was a subsidiary agreement by two or more persons to do the act

consummated by concert of effort may affect the remediable procedure as regards methods of proof. That alienation of a wife's affections is such a wrong does not admit of question.

The foregoing is well supported by authority elsewhere referred to by counsel for respondent. *Price v. Price,* 91 Iowa, 693, 60 N. W. 202; *Young v. Young,* 8 Wash. 81, 35 Pac. 592. Also the following: *Stanley v. Stanley,* 27 Wash. 570, 68 Pac. 187. In each of these instances it was conceded, as it seems, that husband and wife, accomplishing by concert of action deprivation of another of his marital rights, are both liable for the resulting damage.

3, 4. These branches of the case we shall not discuss at length, analyzing and showing the bearing of evidence. It is the opinion of the court that the case is by no means so barren of evidence, either on the subject of concurrence of appellants with bad intent to rob respondent of the affections and society of his wife or that of the accomplishment of such purpose with like intent, as to warrant reversing the trial court in those regards.

We will say in passing in coming to the foregoing conclusion, we have given due consideration to the fact that what a father and mother may do in relation to their daughter continuing to reside with her husband, without inference of bad intent arising therefrom, is quite different from what a stranger may safely do as regards such an interference. True, parents may properly, to some extent, watch over the welfare of a daughter after marriage as well as before. True, they may advise her, under some circumstances, contrary to the inclination of her husband and even to the extent of advising desertion of him and may act upon the mind of the wife successfully to that end from proper motives. Indeed, under some circumstances they might be very derelict in their duty to their daughter if they did not take that extreme course. The relations of a parent and child in their

moral aspects, and legal as well, begin at the inception of life
and do not wholly end until life ends, and those relations
carry with them certain duties and privileges as to advice
and protection and helpfulness in case of need, the observ-
ance of which is so natural and so laudable and so essential
to the family happiness and welfare that acts ostensibly pro-
motive thereof are not to be lightly held to have had a wicked
purpose for their mainspring.  Acts done by a stranger
might well be regarded as malicious, while similar acts by
the parents would not give rise to a well-grounded suspicion
of bad intentions.  We fully recognize such to be the case
and that the true test to be applied to the evidence in this
class of cases is, Were the defendants in what they did ac-
tuated with reasonable parental regard for their child, or
were they actuated by unreasonable ill will towards the hus-
band or the wife, as the case may be ?  If the former and
they yet, from the standpoint of a better or the best judg-
ment, were wrong, excusably mistaking the true situation,
the resulting injury is *damnum absque injuria*.  The cases
cited to our attention on this line are fully appreciated and
the fullest effect the doctrine they declare can reasonably
have in reviewing the evidence, it seems has been given
thereto.  We will preserve here counsel's citations and oth-
ers: *Holtz v. Dick,* 42 Ohio St. 23 ; *Oakman v. Belden,* 94
Me. 280, 47 Atl. 553 ; *Brown v. Brown,* 124 N. C. 19, 32 S.
E. 320 ; *Reed v. Reed,* 6 Ind. App. 317, 33 N. E. 638 ; *Tucker
v. Tucker,* 74 Miss. 93, 19 South. 955 ; *Burnett v. Burkhead,*
21 Ark. 77 ; *Williams v. Williams,* 20 Colo. 51, 37 Pac. 614 ;
*Glass v. Bennett,* 89 Tenn. 478, 14 S. W. 1085 ; *Bennett v.
Smith,* 21 Barb. 439 ; *Smith v. Lyke,* 13 Hun, 204 ; *Hutche-
son v. Peck,* 5 Johns. 196 ; *Huling v. Huling,* 32 Ill. App.
519 ; *Tasker v. Stanley,* 153 Mass. 148, 26 N. E. 417 ; *Fra-
tini v. Caslini,* 66 Vt. 273, 29 Atl. 252 ; *Higham v. Vanos-
dol,* 101 Ind. 160 ; *Campbell v. Carter,* 3 Daly, 165.

Some complaints are made of rulings on evidence, all of

which have received proper attention without harmful error having been discovered.

Several errors are assigned as to refusals to instruct and imperfections in instructions given. It would unnecessarily extend this opinion to a very great length to discuss them in detail. Therefore, we will not do so, but rest those matters in the main by expressing our opinion that so far as requests were refused, which were applicable to the case, they were substantially covered in the general charge.

Counsel's requests Nos. 3, 5, 7, 9, 10, 14, 15, and 16 all appertain to the right and duty of parents to, in good faith, advise their children for such children's welfare, not being responsible for mistakes, and, as to whether the acts done and expressions indulged in and advice given by appellants were of that character, the jury should consider the conduct of respondent as shown by the evidence and all the evidence bearing thereon. All that was said to the jury in a charge commendable for its conciseness and restraint to the legal questions involved.

A charge to the jury is not required to contain a discussion of the evidence in connection with legal propositions applicable thereto, nor to state any such proposition more than once, nor adopt any particular phrasing of a proposition by counsel, nor is it advisable to state any such proposition in an argumentative way, and, of course, it is not necessary to indulge in enlarging upon the importance of a particular proposition in its moral or other aspects. To present a multitude of requests invoking a trial judge to do such things is counsel's right, but whether it is advisable may, at least, well be doubted if not criticised.

Here, the jury were told that "acts of parents" under the circumstances of this case "are presumed to be in good faith and for the purpose of promoting the child's welfare unless the contrary is established by the evidence." "So that to recover it is not only necessary to establish by a preponder-

ance of the evidence that the parents brought about the" result complained of, "but in so doing they acted maliciously, that is in bad faith, not with a view of promoting the daughter's welfare." "If parents who have knowledge of a child's actual situation act in the honest belief that a course taken or advised is for the child's welfare, . . . their acts cannot be deemed malicious, although such conduct in fact appears detrimental to the child's interests." In those few words substantially all that was material in the numerous requests we have referred to was given, rather restrictive, however, in favor of appellants, in that the term "knowledge of the child's actual situation" was used, instead of knowing or reasonably apprehensive of the child's needs, or words of similar import, showing that the parents may advise upon reasonable appearances of necessity therefor as well as upon actual knowledge. Thus incidentally we have answered an assignment of error made further along, grounded on the use of the words which we have seen to have been error in appellants' favor, if error at all.

Error is assigned because the court failed to instruct the jury not to consider advice or statements which may have been given or made to the wife subsequent to the separation. No evidence is referred to calling for such an instruction and we have not discovered any. True, counsel cites us to evidence introduced on behalf of appellants of a letter written to respondent's counsel by his wife some over a month after she ceased living with him, to the effect that appellants were not concerned in the separation and that she would not live with respondent on any account, but how her declaration out of court long after the alleged wrongful act was done could be evidence against respondent or suggest the charge requested, especially when introduced in evidence on behalf of the adversaries, is not perceived. At all events, if the jury considered the letter, as we must assume they did, it having been received as competent evidence, they must have disbe-

lieved it as they found there was no such separation as it suggests but was one produced by malicious connivance of appellants to that end.

Complaint is made because the court charged the jury, in effect, that respondent could recover on account of the loss of the affections and society of his child. We do not find any such instruction. The language referred to by counsel is a part of the court's statement to the jury of respondent's claim. Nowhere is any such element submitted to the jury. Moreover, it was plainly excluded in the instructions as to the elements of damage.

Again, error is assigned that the jury were instructed the burden of proof was on plaintiff to *"establish* the facts essential to his cause of action by a preponderance or greater weight of evidence." The point of attack is at the word "establish," the claim being that its use made the instruction fall short of informing the jury that it was necessary in order to entitle plaintiff to a verdict for them to be satisfied by a preponderance of the evidence of the existence of all the facts essential thereto. The point is not well taken. True, it were better to use the term so often sanctioned by this court, "satisfied by a preponderance of the evidence," or what is still better, in the judgment of the writer, "satisfied to a reasonable certainty by a preponderance of the evidence." *Pelilier v. C., St. P., M. & O. R. Co.* 88 Wis. 521, 529, 60 N. W. 250; *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 219, 78 N. W. 442. But the use of the word "establish" was rather putting it too strong as against respondent than otherwise. *Eberhardt v. Sanger*, 51 Wis. 72, 79, 8 N. W. 111; *Knights of Pythias v. Steele*, 107 Tenn. 1, 63 S. W. 1126. In 3 Words & Phrases, 2471, the author, citing these cases, gives as the rule thereof, and quite properly, that the word "establish," as applied to the quantum of evidence necessary to warrant the existence of a fact in issue, is more appropriate to a criminal than a civil case.

Lastly, complaint is made because the court submitted the question of punitory damages to the jury. Notwithstanding counsel's criticism of the fact and manner of submission we are at a loss to discover any which is well grounded. Moreover, no harm was done, in any event, since no punitory damages were awarded.

All matters referred to in the brief of counsel for appellant, which we have not referred to in some way, have received careful attention, it is thought, resulting in the opinion of the court that the record is free from any harmful error.

*By the Court.*—Judgment affirmed.