KADOW, Respondent, vs. KADOW and wife, Appellants.

*April 4—May 8, 1928.*

*Husband and wife: Alienation of husband's affections: Action against husband's parents: Burden of proof: Presumption of good faith: Reasonable parental regard: Evidence: Sufficiency.*

1. Parents have the right to object to a son's marriage, to refuse to make his wife a member of their family, and to advise him to leave her, if they honestly believe that conditions demand separation, act in good faith, and have substantial reasons for believing that such advice is proper. p. 651.

2. In an action by a wife against the parents of her husband for the alienation of his affections, proof of defendants' failure to give her a Christmas present, to invite her to meals in their home, or to ask her to ride with them, and of the fact that the mother once hung up the receiver when plaintiff was talking to her over the phone, and on another occasion did not answer the door bell when plaintiff called, does not show that defendants advised their son to leave plaintiff, especially in view of undisputed facts indicating the contrary. p. 652.

3. In this case the wife had the burden of establishing that the acts of the parents and their advice were the controlling cause of the separation and loss of affections, and that such acts were the result of malice or bad intent toward plaintiff. p. 652.

4. If the parents were actuated by reasonable parental regard for him, rather than unreasonable ill will towards plaintiff, in what they did, but were wrong from the standpoint of best judgment, excusably mistaking the true situation, the resulting injury is *damnum absque injuria.* p. 653.

5. The law will presume that the parents of the husband in what they did acted for the purpose of promoting the son's welfare, and not maliciously to wrong plaintiff. p. 653.

6. To recover from a husband's parents for the alienation of his affections, it is not sufficient to assert that the record discloses no other reasonable cause of separation than defendants' acts, but plaintiff must establish that such acts were the controlling cause of the separation and were done maliciously and in bad faith. p. 653.

OWEN and CROWNHART, JJ., dissent.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Reversed.*

Action by *Malinda Kadow* against *Wenzel C. Kadow* and *Mary L. Kadow* begun March 24, 1927, to recover damages for alienation of the affections of plaintiff's husband by the defendants, who were the parents of the husband. From a judgment for the plaintiff entered September 10, 1927, the defendants appealed.

For the appellants there was a brief by *E. S. Schmitz* of Manitowoc and *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Adolph J. Schmitz*.

*Oliver L. O'Boyle* of Milwaukee, for the respondent.

STEVENS, J.   The case presents a real tragedy.   A son of respected parents married a woman whose character is above reproach.   The wife and the parents have abundantly demonstrated their unselfish and devoted love of this man, whose uncontrolled appetite for liquor has imposed a heavy burden of sorrow and of suffering upon both the plaintiff and these defendants.

The testimony shows that these parents did not welcome plaintiff as a daughter-in-law.   She was a divorced woman with a child and was seven years older than their son.   She had gone with him to Waukegan, Illinois, to be married, without their knowledge and consent.   They had hoped that he would marry another girl.   As parents they had the right to object to this marriage and to build other castles in the air for their son.   They had the right to refuse to make the plaintiff a member of their family.   They had the right to advise their son to leave his wife, if they honestly believed that conditions were "such as to demand separation, provided they act in good faith and have substantial reasons for believing that the advice given is proper." *Baird v. Carle,* 157 Wis. 565, 567, 147 N. W. 834.

But the record is barren of any competent evidence whatever that these parents advised their son to leave the plaintiff.   The most that can be said is that there is proof of cir-

cumstances which plaintiff contends is sufficient to show that the parents did advise separation. This proof consists of such circumstances as the failure of the parents to give the plaintiff a Christmas present, or to invite her to meals in their home, or to ask her to ride with them, and such facts as that on one occasion the mother hung up the receiver when the plaintiff was talking to her over the phone, and that at another time the mother did not answer the door bell when the plaintiff called at the home of the parents.

Opposed to these circumstances upon which the plaintiff relies is the undisputed fact that these parents time and again took their son to the plaintiff's home when she asked their assistance because he was incapacitated by the use of liquor; that the father told the son that he ought to live with his wife, and that following that advice the son did go to the plaintiff's home and live with her as husband and wife for more than a year. The plaintiff testified that the father told her that she and the son were married and that they must make the best of things.

One spouse who seeks to recover damages of the parents of the other spouse for the alienation of the affections of that other spouse has the burden of establishing two facts: (1) that the acts and advice of the parents were the controlling cause of the separation and of the loss of affections; (2) that such acts were the result of malice or bad intent on the part of the parents toward the spouse claiming damages. *McLery v. McLery,* 186 Wis. 137, 142, 202 N. W. 156.

"The relations of a parent and child in their moral aspects, and legal as well, begin at the inception of life and do not wholly end until life ends, and those relations carry with them certain duties and privileges as to advice and protection and helpfulness in case of need, the observance of which is so natural and so laudable and so essential to the family happiness and welfare that acts ostensibly promotive thereof are not to be lightly held to have had a wicked purpose for

their mainspring. Acts done by a stranger might well be regarded as malicious, while similar acts by the parents would not give rise to a well-grounded suspicion of bad intentions. We fully recognize such to be the case and that the true test to be applied to the evidence in this class of cases is, Were the defendants in what they did actuated with reasonable parental regard for their child, or were they actuated by unreasonable ill will towards the husband or the wife, as the case may be? If the former and they yet, from the standpoint of a better or the best judgment, were wrong, excusably mistaking the true situation, the resulting injury is *damnum absque injuria.*" *Jones v. Monson,* 137 Wis. 478, 486, 487, 119 N. W. 179. "This rule is not only humane, but a contrary one would be almost intolerable." *Baird v. Carle,* 157 Wis. 565, 567, 147 N. W. 834.

The law presumes that these parents did what they did for the purpose of promoting the welfare of their son and not to maliciously wrong this plaintiff. *McLery v. McLery,* 186 Wis. 137, 142, 202 N. W. 156. The proof does not overcome that presumption in this case. It is not sufficient to assert that the record discloses no other reasonable cause for the separation.

In order to recover plaintiff must go farther and establish that the acts of the parents were the controlling cause of the separation and that these parents acted "maliciously and in bad faith." *Baird v. Carle,* 157 Wis. 565, 567, 147 N. W. 834.

It appears very plainly that the reason for the unfortunate situation which has caused all the parties to this action to suffer in a way that cannot be measured by dollars and cents is that the chief actor in this tragedy has been induced to do what he has done by the rash impulses that have controlled him at times when he has been robbed of his reason by his compelling appetite for strong drink. He is the one who should compensate the plaintiff for the loss she has sus-

tained,—not these parents who were charged with the duty and who had the privilege of advising and protecting their unfortunate son,—a duty and a privilege that arises out of a relationship that had its inception when his life began and which will not be discharged until his life is ended.

When the plaintiff and these defendants had to seek him in the saloons and upon the streets, often in the dead of night, the plaintiff recognized that he was in as great need of the care and protection of his parents as when he was an infant in his mother's arms. What these defendants did they did to promote the welfare of their son, not to maliciously wrong the plaintiff.

The finding that these parents intentionally alienated the love and affection of their son for the plaintiff and caused him to desert her and remain away from her is so clearly against the great weight and clear preponderance of the evidence that it must be set aside.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

Owen, J. (*dissenting*). Fully appreciating the privileges enjoyed by parents in the matter of advising their children with reference to marital affairs, I still think the verdict in this case is supported by abundant evidence. To be sure, the evidence is circumstantial, but, generally, this must be the character of the evidence in such cases. If the verdict must be based upon direct evidence, then in the great majority of cases of this character the plaintiff must fail.

The evidence shows that from the beginning the defendants were hostile to the marriage. This was not because they objected to their son's entering into the marriage relation. They objected to his marrying the plaintiff. Before the marriage of their son to the plaintiff they actively promoted a match between him and another girl. Their attitude towards the plaintiff persisted after the marriage. This manifested itself in numerous ways. They never invited her

to their home; they never remembered her with a Christmas gift; they did not acknowledge Christmas gifts which she made to them; they took him in their automobile, leaving her standing on the street; they sought her consent to procure an annulment of the marriage, and they had just as little to do with her as possible. It was their entire privilege to decline social relations with her, but their attitude towards this plaintiff cannot be ignored in weighing the testimony in this case. This is peculiarly a case where the verdict of the jury must rest upon inferences drawn from the facts. If reasonable inferences drawn from such facts sustained the conclusion of the jury, the verdict should not be disturbed.

Plaintiff and her husband lived happily together. There is nothing in this record to indicate a lack of affection between them. She was a most faithful and indulgent wife. She put up with his weakness for drink without complaint. There is no evidence of any trouble between them. A consideration of their relation reveals no reason, justification, or excuse for his desertion of her.

It will serve no purpose to review the evidence in detail. He left her on April 25, 1926, and her testimony with reference to the occasion is as follows: "We had company the early part of the evening and he [her husband] sat there in kind of a quiet manner until it got to be about 9 or 10 o'clock, I would say, when he told me he had something to tell me, that he had to go out to get couple of drinks first. He went out and got a couple of drinks and he came back and told me that he thought it was best we separate, that would be for the best as long as his parents were using the attitude they did; and I told him to wait until the following day when he didn't have any liquor in him and we would discuss that. So we waited a short time, and he went out for some more liquor, and he brought back a bottle. He then went to the telephone and called his father. He says, 'I am ready now, you can come.' Then he left the telephone and he came, put his arms around me, told me that he cared for me but it was for the

best that we were separating." His father came in about ten minutes and he left the house with his father.

When we consider the general attitude maintained at all times by the defendants towards the plaintiff—that they endeavored to bring about an annulment of the marriage—that although they were at all times deeply interested in the son, they refused to assist him in any financial way—refused to assist him in the purchase of furniture for the home, and even reduced his salary to make it more difficult for him to maintain the marital relation—the fact that the suggestion of separation was deliberately, though apparently reluctantly, made—the fact that immediately thereafter the son called his father and said "You can come now," and that within ten minutes the father appeared upon the scene and took his son home,—clearly indicates (1) that the proposal to separate did not spring from the free will of the son; (2) that it was part of a prearranged plan; (3) that the father was waiting for the news; and (4) upon hearing from the son he promptly came and took him away.

These circumstances under which he deserted her, considered in the light of the genial relations always existing between the plaintiff and her husband, and the attitude maintained by the parents towards the plaintiff, amply justified the inference which the jury evidently indulged. The case was submitted to the jury under proper instructions, an able trial judge permitted their verdict to stand, and I do not think it should be disturbed.

I am authorized to state that Mr. Justice CROWNHART concurs in the foregoing dissenting opinion.